[Civ. No. 1380.   Second Appellate District.—April 1, 1914.]

# W. H. ELY, Respondent, v. A. H. LISCOMB et al., Appellants.

CLAIM AND DELIVERY—UNDERTAKING TO SECURE RETURN OF PROPERTY—OFFER TO REDELIVER CHATTELS AFTER JUDGMENT—RELEASE OF SURETIES.—Where the defendants in claim and delivery give an undertaking whereby they obtain possession of the property, and after judgment for the plaintiff the sureties on the undertaking make an offer to his attorneys to return the property, the sureties are thereby released although the attorneys do not communicate the offer to their client.

ID.—ATTORNEYS—IMPLIED AUTHORITY TO ACCEPT RETURN OF PROPERTY. Attorneys employed to bring an action of claim and delivery have implied authority, after judgment for the plaintiff, to receive the property when its return is offered by the sureties on an undertaking executed by the defendants to obtain possession of it pending the action.

ID.—PROCEEDS OF JUDGMENT—AUTHORITY OF ATTORNEY TO RECEIVE.— The authority of an attorney to receive the proceeds of a judgment is not, under subdivision 2 of section 283 of the Code of Civil Procedure, confined to those cases where a money judgment is rendered.

ID.—SURETYSHIP—DUTY OF CREDITOR TOWARD SURETIES—GOOD FAITH AND PROTECTION.—It is the duty of a creditor to act in the utmost good faith toward his sureties, and so far as he can consistently with the security of his own rights, protect the interests of the sureties as well as his own.

APPEAL from a judgment of the Superior Court of Kern County.   J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

Kaye & Siemon, for Appellants.

Rowen Irwin, and Lamberson, Burke & Lamberson, for Respondent.

SHAW, J.—Action to recover upon an undertaking given by defendants pursuant to the provisions of section 514 of the Code of Civil Procedure.   Judgment went for plaintiff, from which defendants appeal.

In June, 1904, plaintiff brought suit in claim and delivery against Ben C. Williams and Forrest Flint for the possession of certain chattels, consisting of horses, vehicles, and other equipment of a livery stable, including a barn 75 by 120 feet in dimensions, which was erected upon a lot the use of which was leased therefor, and upon all of which plaintiff held a chattel mortgage executed by Williams and Flint, to foreclose which plaintiff had brought suit.

For the purpose of securing the return of the chattels Williams and Flint, defendants in that action, caused an undertaking executed by defendants herein, as prescribed by said section 514 of the Code of Civil Procedure, to be given the sheriff; whereupon he returned the property to defendants in said action.

On October 31, 1904, the case was tried, followed on November 17th by a decision for plaintiff, in whose favor judgment was entered on December 17th. The lease of the lot upon which the barn was erected, by its terms, expired January 1, 1905, and the provisions of the lease were such that if the barn was not removed before the termination of the lease, all right of the lessees thereto terminated and the same became the property of the lessor as owner of the lot. Prior to the time of the trial Williams and Flint had abandoned the business and delivered possession of all the property involved in the action to the defendants herein, who had given the undertaking for the return thereof. All of the property for which delivery was adjudged, other than the barn, was by these defendants delivered to plaintiff after January 1, 1905, at which time, by reason of the title to the barn having under the terms of the lease passed to the owner of the lot, it was impossible to deliver the same to plaintiff.

This action was brought to recover the value of the barn, together with damages and costs expended in the suit instituted against Williams and Flint for the recovery of the property.

In their answer defendants alleged that subsequent to September 22, 1904, said Williams and Flint at divers times offered to deliver to said plaintiff all of the personal property described in the complaint, including said barn, and on November 28, 1904, made an offer in writing to deliver all of the

said personal property and the said stable or barn to the plaintiff, which said offer was refused and plaintiff refused to take possession of the same; that at the time when said offers to deliver the property were made to plaintiff, Williams and Flint were in possession of the same, and at all times prior to January first said barn was held by Williams and Flint under a lease of the lot upon which the stable was erected, which lease expired January 1, 1905, at which time the lessees ceased to have any right of possession to the barn, and the owner of the lot entered into and held possession thereof.

Upon the issues so tendered, the court found that plaintiff was at all times ready and willing to receive the barn; that defendants on several occasions offered to deliver it to him, but at the times when such offers were made they did not have possession thereof and could not deliver it; that on November 28, 1904, Williams and Flint, by their attorneys, served upon the attorneys of record for plaintiff in the claim and delivery action a written offer to deliver the same, together with the other property involved, to plaintiff, but plaintiff's attorneys never communicated the same to him. These findings, other than that to the effect that defendants offered to deliver the barn to plaintiff, are attacked by appellants upon the ground that they are not supported by the evidence.

The evidence, without contradiction, shows that in August or September, 1904, Williams and Flint abandoned the business and delivered possession of all of the property involved to defendants herein; that from that time to January 1, 1905, the barn and all of said property was in the possession and under the control of defendants. The testimony of defendant Stoll is to the effect that in August or September, 1904, they having possession and control of the property, all of which was then in the barn, he and his codefendant met plaintiff at the former's store, at which time they told plaintiff he could have the property; that they were anxious to get rid of it. "The only answer he gave us," says the witness, "was, 'I don't want the stable; I don't want that stable at all.' He says, 'the bond is good enough; you and Dr. Liscomb are good enough for that amount.' That was the main argument; we was good enough for the amount of money that we was up against for the bond." The only evidence tending to controvert this is the testimony of plaintiff, who stated that prior to

January 1, 1905, he had a conversation with defendants wherein *he offered* to compromise and satisfy the said judgment, if defendants would make good what property was gone and *pay up the back rent on the barn;* that Liscomb said, "No, you will take just what is left, or nothing." "Q. Didn't they, at the time this compromise was talked over, offer to deliver to you this property, and tell you that you could have it, that it was at your disposal? A. They said I could have what was left, yes, sir. Q. Wanted you to take it? A. Well, they wanted me to take what was left, yes. Q. What do you mean by the statement, 'what was left'? A. Well, there was some of the rigs and some of the stock. And me pay up the back rent, I believe. Q. The difficulty was, they wouldn't pay up any rent? A. They would not pay up any rent, or make good the other property, the harness and stuff that was gone." The subject of this action is the value of the barn, and not the rent; nor is "the harness and stuff that was gone" involved herein. Defendants were at the time in possession of the barn, and according to plaintiff's own testimony, offered to deliver it with other property to him and wanted him to take it. He refused to accept it, unless they made good the alleged loss of some of the property, just what, or its value, is not made to appear, and pay up arrearage of rent, as to which they had assumed no obligation.

It further appears that on November 28, 1904, *after judgment had been ordered for plaintiff,* Anderson & Kaye, attorneys for Ben C. Williams and Forrest Flint in the claim and delivery action, delivered to J. W. P. Laird and E. B. Coil, attorneys of record for plaintiff in said action, a formal written offer, signed "Ben C. Williams and Forrest Flint, by Anderson & Kaye, their attorneys," and addressed to plaintiff and his attorneys, whereby they offer to deliver to plaintiff all the property involved in the action and specifically describing the barn, the value of which is the subject thereof. The court found that the written offer was made as alleged, on November 28, 1904, but that plaintiff's attorneys, to whom the written offer was delivered, never communicated the same to him. The contention of respondent, and the view apparently taken by the trial court, was that plaintiff's attorneys as such had no authority to receive the chattels involved, and hence the offer, since they did not communicate it to plaintiff, was in-

effectual as a tender.  Upon delivery of the property, defend-
ants had a right to insist upon the judgment being satisfied.
Plaintiff's attorneys of record were the only persons who were
authorized to enter such satisfaction.  They had been em-
ployed to institute a suit for recovery of possession of the barn
as personal property; and, in our opinion, it follows that they
were authorized to receive the property the recovery of which
was sought.  Respondent cites subdivision 2 of section 283 of
the Code of Civil Procedure, which provides that an attorney
has the authority "to receive money claimed by his client in
an action or proceeding during the pendency thereof, or after
judgment, unless a revocation of his authority is filed, and
upon the payment thereof, and not otherwise, to discharge
the claim or acknowledge satisfaction of the judgment"; and
insists that the authority of an attorney to receive the proceeds
of a judgment is confined to those cases only where a money
judgment is rendered.  In our opinion, it could not have been
the intent of the legislature to so limit the authority of an
attorney.  Plaintiff's attorneys of record were authorized to
have issued an execution and direct the levy thereof upon the
property, and thus indirectly secure possession of the prop-
erty.  Having this power, it must follow that they were like-
wise authorized to receive the property the possession of which
had been adjudged to their client.  It was therefore immaterial
whether or not the offer so made to plaintiff's attorneys was
communicated to him.  Had it been a judgment for money,
the offer to the attorneys would have exonerated the sureties
upon the undertaking.  Since it was a judgment for the pos-
session of chattels, the offer made to plaintiff's attorneys to
deliver the chattels to plaintiff, likewise exonerated them
from liability upon the undertaking.  We think the evidence
clearly shows that from September, 1904, at which time Will-
iams and Flint delivered the property to these defendants,
they were willing and anxious to relieve themselves from their
obligation on the undertaking by delivering the same to plain-
tiff; and it is likewise clear, as to the barn at least,—title to
which unless removed before January 1, 1905, would be lost,—
that plaintiff was unwilling and refused to receive the same,
preferring, as he said, to look to the undertaking for its value.
It is the duty of a creditor to act in the utmost good faith
toward a surety, and so far as he can consistently with the

security of his own rights, protect the interest of the former, as well as his own.

In our opinion, the evidence shows that on two occasions prior to January 1, 1905, at which time title to the barn passed to the owner of the leased lot, delivery of possession thereof was offered to plaintiff, in compliance with the conditions of the undertaking, at which times the persons making the offer were in possession and control of the barn and were ready, able, and willing to deliver the same to plaintiff, but that he refused to accept it. Hence, the findings upon which the judgment is based are not supported by the evidence. This conclusion renders it unnecessary to discuss other alleged errors upon which appellants claim a reversal.

The judgment is reversed.

Conrey, P. J., and James, J., concurred.