**Ercole Monacelli, Appellant, v. John E. Traeger, Sheriff, Appellee.**

**Gen. No. 30,089.**

1. AGENCY—*sufficiency of evidence to show authority of agent under power of attorney to indorse check payable to principal.* In an action against a former sheriff to recover a balance alleged to be due to plaintiff as the proceeds of a judicial sale conducted by the sheriff to satisfy the lien of a judgment recovered by plaintiff against a third party, evidence held sufficient to sustain a finding that a check drawn by the sheriff in payment of the balance due plaintiff as aforesaid, the proceeds of which were paid to plaintiff's attorney of record in the former suit, who absconded there-

with, was cashed upon the indorsement of plaintiff's name thereon by plaintiff's attorney in fact, acting under a valid power of attorney.

2. Attorneys and counselors—*delivery by sheriff to attorney of judgment creditor of check payable to latter as satisfaction of claim for proceeds of judicial sale.* The delivery to plaintiff's attorney of record of a check for the proceeds of a judicial sale held to satisy the lien of a judgment, by the sheriff who conducted the sale, held good as a payment of the obligation of the sheriff to plaintiff, where the check was made payable to plaintiff's order, notwithstanding the fact that after fraudulently securing an indorsement of plaintiff's name upon the check, plaintiff's attorney absconded with the proceeds thereof.

Appeal by plaintiff from the Superior Court of Cook County; the Hon. Marcus Kavanagh, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1925. Affirmed. Opinion filed December 2, 1925.

McMahon & Graber, for appellant.

O'Shaughnessy & O'Shaughnessy, for appellee.

Mr. Justice O'Connor delivered the opinion of the court.

Plaintiff brought suit against the defendant, John E. Traeger, individually and as former sheriff of Cook county, to recover $1,462.91, which plaintiff claimed belonged to him and was held by the sheriff. The defense interposed was that the sheriff had drawn his check for the amount claimed, payable to plaintiff's order and delivered it to plaintiff's attorney of record Joseph B. Gecan. The evidence discloses the check was cashed by Gecan, who absconded with the money, and plaintiff's position is that his name was indorsed on the check without his authority and was, therefore, a forgery. The controversy on the trial, which was before the court without a jury, was whether plaintiff's name was indorsed on the check without his authority. The court found that the indorsement on the check was authorized and, therefore, the plaintiff could not recover.

The record discloses that plaintiff, who was a resident of Detroit, recovered a judgment for $809.72 in the circuit court of Cook county against his brother and the latter's wife; that subsequently, for the purpose of perfecting his judgment lien, plaintiff advanced to the sheriff $559.99 "for redemption interest and costs"; that on or about December 1, 1918, the former sheriff sold the interest of the judgment debtor in certain premises for $3,250 out of which there was due plaintiff $1,462.91; that on February 21, 1919, the former sheriff issued his check payable to plaintiff's order for $1,462.91, and delivered it to Gecan who was counsel for plaintiff in the suit in which the judgment was entered in the circuit court; that plaintiff's name was indorsed on the check by Samuele Crisorio, who claimed to have done so under a written power of attorney which had been given to him by plaintiff. The check was then indorsed by Gecan, deposited in his bank and through the regular course of business paid by the bank on which it was drawn. Gecan converted the money to his own use and disappeared. He was afterwards disbarred. In November, 1919, plaintiff not having received his money came to Chicago, consulted another attorney with whom he went together with Samuele Crisorio to see the former sheriff at which time the defendant, Traeger, produced the check which he had given to Gecan, showing that he had paid the money. Plaintiff there admitted that he had given a power of attorney to Crisorio and did not then repudiate Crisorio's indorsement of the check. Nothing further appears to have been done until the suit was brought in June, 1922.

The evidence further shows that plaintiff had executed a power of attorney to Crisorio and that plaintiff had on deposit with the Commercial Bank of Chicago Heights $800, which was drawn out by three checks signed by Crisorio under the power of attorney. The first check dated June 18, 1918, was payable to

the order of Gecan for $250. It was signed "Ercole Monacelli, by Samuele Crisorio." The next check was dated September 12, 1918, drawn on the same bank, payable to the order of Gecan for $545 and signed in the same way by Crisorio. The third check was for $5, payable to the order of one Cohen, signed in the same manner. Gecan indorsed the two checks for $250 and $545, drew the money from the bank and part of this was deposited by him with the sheriff in perfecting plaintiff's judgment lien as above stated. The evidence further shows that the written power of attorney was delivered by Crisorio to Gecan at the time Crisorio indorsed the check in question and this power of attorney was submitted by Gecan to his bank when he deposited the check. The exact terms of this power of attorney did not appear for the reason that it was kept by Gecan and, therefore, could not be produced on the trial. There is considerable evidence in the record as to whether Crisorio had the authority under the power of attorney to indorse the check in question, which we think it is unnecessary to state here. The court found as a fact "that Ercole Monacelli executed and delivered to Samuele Crisorio a power of attorney in and by which said Monacelli authorized the said Crisorio to endorse the name of the said Monacelli upon the check offered in evidence in this case," and held as a matter of law that Crisorio was the agent of Monacelli and had authority to indorse the name of Monacelli on the check in question. We think the evidence warranted the finding of fact made by the learned trial judge and while there was some conflict in the evidence, we are clearly of the opinion that we would not be warranted in disturbing such finding as being against the manifest weight of the evidence. The indorsement upon the check having been authorized by plaintiff, of course, he could not recover in this case.

But there is another reason why the judgment must

be affirmed. There is no contention that the sheriff was not authorized to deliver the check to Gecan as attorney for plaintiff, nor could there be any such contention successfully made under the law (*Custer v. Agnew*, 83 Ill. 194), but it is assumed that the sheriff properly delivered the check. Even if the indorsement of plaintiff's name on the check was a forgery, no recovery could be had against Traeger. *McFadden v. Follrath*, 114 Minn. 85; *Sage v. Burton*, 84 Hun. 267, 32 N. Y. Supp. 1122; *Allen v. Tarrant*, 7 App. Div. (N. Y.) 172, 40 N. Y. Supp. 114; *Morris v. Hofferberth*, 81 App. Div. (N. Y.) 512, 81 N. Y. Supp. 403; *Burstein v. Sullivan*, 134 App. Div. (N. Y.) 623, 119 N. Y. Supp. 317; *Morrison v. Chapman*, 155 App. Div. (N. Y.) 509, 140 N. Y. Supp. 701.

In the *McFadden* case plaintiff sued the defendant for goods sold and delivered. The defense was payment by giving a check payable to plaintiff to one of plaintiff's traveling salesmen, who was authorized to receive payment in cash or by check. The salesman without authority indorsed plaintiff's name on the check and obtained the money, but did not account for the proceeds to plaintiff. He was not authorized to indorse plaintiff's name on checks. The court held that no recovery could be had and said (p. 90): ''It would be a novel burden if the drawer of a check, given in the usual course of business to the authorized agent of the payee, upon such check being endorsed by such agent, were charged with the duty of determining that the endorsement on the check was authorized. To establish such a rule would make payment by check a matter of uncertainty and some risk. * * * If the check is improperly paid, because of the dishonesty of the agent that the payee intrusts with the check, and the negligence of the bank, there would seem to be no sufficient reason for placing the responsibility therefor on the drawer of the check. The drawer of the check parted with control over it

in the usual course of business, and in this case in the exact manner the payee requested. If either the drawer or payee must suffer because of the dishonesty of the agent, the one who designated him to receive the check and intrusted him with it should suffer, rather than the drawer, who had no voice in the selection of such agent, and who is in no way responsible for his acts.'' The court there further said that the question there involved had been decided in *Sage v. Burton* and *Burstein v. Sullivan, supra,* and on page 91 quoted from the *Sage* case, as follows: ''While a check of the debtor does not, until paid, ordinarily amount to payment of the debt, it does, after payment of the check, extinguish the debtor's liability, if the same is paid to the creditor, or to the agent of the creditor authorized to receive the check of the debtor, for the reason that, after he had parted with the check to the creditor, or his agent, he has no further duty in the matter, except to see that funds are in the bank on which it is drawn for its payment.'' The court quoted with approval from the *Burstein* case, as follows: ''But where a debtor delivers his check to the creditor, or his agent duly authorized to receive it, and has funds in the bank to meet the check, the transaction as between the debtor and the creditor should be treated as a payment precisely as though cash had been paid, even though the agent forges an endorsement and steals the money.''

In the *Sage* case suit was brought to recover a balance claimed due for the sale of merchandise. The defense was that the defendant had delivered a check payable to plaintiff's order to one of its agents authorized to receive the check. The agent without expressed authority indorsed the check, received the money from the bank, but did not pay it over to plaintiff. The court held that no recovery could be had and said (p. 270): ''The plaintiffs having authorized the agent to receive the check, and thus removing it beyond the

control of the defendant, took, as between them and the defendant, the risk of the acts of their own agent; all the risk that the defendant took in the matter was that of establishing that the agent had power and authority to take the check in settlement, and that the drawer had funds in the bank with which to pay it on presentment. He did not even take the risk of a forged endorsement. That, probably was the risk of the bank."

In the *Allen* case suit was brought to recover a claimed balance due for goods sold and delivered to the defendant. The defense was payment by giving a check to plaintiff's salesman who was authorized to receive the check or money. It appeared that one of the checks had been indorsed by one of the salesmen, the money received by him and appropriated to his use. The court held that no recovery could be had and said (p. 174): "The delivery of a check to the principal or his authorized agent and the subsequent payment of the same operates to discharge an indebtedness for which it is given," and further said that the case could not be distinguished in principle from *Sage v. Burton, supra.*

In the *Burstein* case suit was brought to recover for the repairing of an automobile. The defense was payment. The evidence showed that the defendant made a check payable to plaintiff's order and delivered it to plaintiff's manager who indorsed the check and appropriated the money to his own use. The court held that no recovery could be had against the maker of the check. In the discussion of the case the court said that plaintiffs sought to support the judgment on the authorities of *Bernheimer v. Herrman,* 44 Hun 110; *Dowdall v. Borgfeldt & Co.,* 113 N. Y. Supp. 1069; *Thomson v. Bank of British North America,* 82 N. Y. 1; *Robinson v. Chemical Nat. Bank,* 86 N. Y. 404, and said in reference to *Bernheimer* case that the agent who made the indorsement in that case was

not a general manager as in the case before it and then showed that the authorities were not in point and said (p. 319): "A payment to Melle in cash would have been a payment to the plaintiffs, though he had stolen the money, and the defendant should not be compelled to pay twice or subjected to the hazard of a lawsuit with the bank, for having taken the precaution to protect the plaintiffs by making a check payable to their order. * * * But where a debtor delivers his check to the creditor or his agent, duly authorized to receive it, and has funds in the bank to meet the check, the transaction, as between the debtor and the creditor, should be treated as a payment, precisely as though cash had been paid, even though the agent forges an endorsement and steals the money. * * * Upon the delivery of the check to Melle, in payment of the bill rendered by him, it became the plaintiffs' property; and, if their agent by a forged endorsement, or one made without sufficient authority, obtained the cash and appropriated it to his own use, they should settle the question with the bank," citing the *Sage* and *Allen* cases.

In the *Morrison* case suit was brought against a firm of stock brokers by a customer for a balance claimed to be due. The defense was that they had paid the amount to plaintiff's agent by delivering their stock payable to plaintiff's order. It appeared that the agent had wrongfully indorsed the check and obtained the money. The court there reviewed the authorities and held that no recovery could be had, and that the agent having authority to receive the check, and the check having been paid, the defendants should not be charged with the agent's rascality in appropriating the money to his own use.

Plaintiff relies on the case of *Bernheimer v. Herrman, supra,* where an action was brought to recover for goods sold and delivered. The defense was payment by showing that a check was given to its agent

payable to plaintiff's order and paid the agent without authority, indorsed plaintiff's name, received the money which he appropriated to his own use, and it was held that this did not constitute a payment. That case was, in effect, overruled by the New York authorities which we have above cited. We think the opinion in the *Bernheimer* case is unsound and prefer to follow the other opinions rendered by the same court in New York, which in our opinion are in accordance with common sense and sound reasoning.

In the instant case the defendant having delivered his check payable to plaintiff's order to plaintiff's agent, who was authorized to receive it and the check having been paid, the rascality of plaintiff's agent should not fall upon the defendant.

The judgment of the superior court of Cook county is affirmed.

*Affirmed.*

THOMSON, P. J., and TAYLOR, J., concur.