[Civ. No. 3494.   Third Appellate District.—December 7, 1928.]

PACIFIC ACCEPTANCE CORPORATION (a Corporation), Appellant, v. T. S. JONES, Respondent.

Brownstone & Goodman and Herman A. Bachrack for Appellant.

Gaddis & McDonald for Respondent.

THOMPSON (R. L.), J., *pro tem.*—This is an appeal from a judgment in favor of the defendant in an action to replevin an automobile. The answer asserts that the right of possession and title to the car were in the respondent. It also alleges that the car was worth $403.11, and prays for the return of the machine or the payment of its value.

May 23, 1925, Harmon & Graves Motor Company of Eureka, sold and delivered to C. A. Bland a Nash touring car upon an executory contract, by the terms of which the title remained in the vendor until the purchase price was fully paid. C. A. Bland was a minor, and the contract was, therefore, executed by his father, C. M. Bland, although the car was registered in the name of the son. Three days after the contract was executed it was assigned to the Pacific Acceptance Corporation of San Francisco. Harmon & Graves maintained an office at Redding, in the vicinity of which the Blands resided. After the assignment of the contract several payments thereon were made to Harmon & Graves which were accepted and credited without criticism on the part of the appellant. In February, 1926, Bland was having trouble with his machine and drove it into respondent's garage at Woodland for repairs. An agreement was then made with respondent to exchange this machine for another automobile, upon the purchase price of which Bland was credited the sum of $700 as the value of his Nash car. Bland then drove the new machine away, promising respondent to immediately pay the balance due upon the old machine. In February, 1926, the appellant wrote to C. A. Bland a letter acknowledging receipt of two in-

stallments which were paid upon the Nash car. The appellant said: "You have requested information as to whether it will be satisfactory for you to make two payments at a time. But we understand from our representative who is at present in and around Redding helping Mr. Graves with some of his collections, that you have already traded your car off. . . . If this rumor is true . . . we must ask you to send us the entire balance of $403.11." This letter was signed "Collection Manager," beneath which appeared the firm name of Harmon & Graves. February 24, 1926, Mr. Brown, the agent of appellant, called at the home of Bland and demanded payment of the balance of the purchase price of the Nash machine. Bland told the agent that he would meet him the following day in Redding and pay the balance. Brown agreed to meet him at the office of Harmon, & Graves, but said he had other business in that vicinity and added: "If I am not there, Graves will attend to it for me." In this regard, Bland testified on cross-examination: "Q. As I understand it, Brown told your father if he wasn't at Harmon & Graves the next morning, to pay the balance due on this account to Graves, at Harmon & Graves? A. (Yes, he said to) pay it to Graves." At 9 o'clock the next morning Bland appeared at the designated office in Redding pursuant to agreement and found Brown absent. After considerable delay and effort to obtain Brown's presence, Bland executed and delivered his check to Graves for the entire balance of the purchase price of the Nash car. It appears that Graves failed to account to appellant for this payment. The trial court found that appellant was neither the owner nor entitled to the possession of the automobile, and decreed that it take nothing by this action. Upon the contrary, the court found that respondent was the owner and entitled to the possession of the Nash car; that it was worth $403.11, and that subsequent to the commencement of the action appellant had sold the machine and was unable to restore it to the owner, and thereupon rendered judgment in favor of the respondent for the sum of $403.11.

The appellant asserts that (1) the findings and judgment are not supported by the evidence, that (2) Graves was not authorized as its agent to collect the money in question, that (3) since the balance of the purchase price of the machine had not been paid to appellant, Bland had

no title to convey to the respondent, and that (4) the respondent held no valid title to the automobile since the certificate of ownership had not been transferred to him as provided by section 45 of the Motor Vehicle Act. [Stats. 1923, p. 517].

The vital question involved in this appeal is whether Bland was justified in assuming that Graves was authorized by the appellant to collect the balance of the purchase price of the automobile. While there is a conflict of testimony, we are of the opinion that the record discloses substantial evidence of the existence of an ostensible agency in Graves. Brown was the authorized agent of appellant, empowered to collect the balance of the purchase price of the machine or repossess it. He demanded payment from Bland and agreed to meet him at the office of Harmon & Graves in Redding for that purpose, saying: "If I am not there, Graves will attend to it for me." Harmon & Graves were the original owners of the machine and executed the contract of sale to Bland. The contract itself directed that the payments be made *"at the office of the seller,* or his assigns." After the assignment of the contract several installments were paid by Bland to Harmon & Graves and credited to his account without objection on the part of appellant. The appellant knew that payments were made in this manner. Bland testified that he wrote the appellant July 17, 1925, saying: ". . . Now I paid two payments on my car June 23. I paid the payments that was due and also the July payment, and I have receipts to show it. I paid it to John Witherow one of Harmon & Graves head salesmen. So please look up the mistake at once as I do not intend to make payments twice." In spite of the fact that appellant knew these payments were being made to Harmon & Graves, it failed to direct Bland to discontinue this practice. In this regard, Mr. Bland testified: "Q. Did you ever receive any notice from the Pacific Acceptance Corporation asking you not to make any payments to Graves . . . ? A. No sir, I did not." The authority of an agent is to be determined by the relation of the parties together with the conduct and declarations of the principal. (1 Cal. Jur. 695, sec. 5; 21 R. C. L. 819, sec. 5; *Renos* v. *Zahm & Nagle Co.,* 78 Cal. App. 728 [246 Pac. 564].) In the case of *Schnier* v. *Percival,* 83 Cal. App. 470 [256 Pac. 1109],

where the principle of ostensible agency was involved, the court said: "It appears from the evidence in the case that defendants knew the general custom of Eshleman to collect payments and issue receipts in his own name and, by failure to object, acquiesced in this conduct. Where the acts are of such a nature and so continuous as to justify a reasonable inference that the principal knew of them and would not have permitted them if unauthorized, the acts are competent evidence of agency." An agent is authorized to perform any act which the principal may transact, except when it clearly appears that his authority is otherwise limited. (Sec. 2305, Civ. Code.) Since the acts, conduct and omission of appellant to notify Bland not to pay installments to Harmon & Graves may reasonably be said to have justified him in believing that Graves was authorized to collect the balance of the purchase price of the automobile the appellant is estopped from denying the authority of its agent in this respect. (Sec. 2317, Civ. Code; *Henry Cowell Lime & Cement Co.* v. *Santa Cruz County National Bank*, 82 Cal. App. 519, 523 [255 Pac. 881]; *Robinson* v. *American Fish & Oyster Co.*, 17 Cal. App. 212 [119 Pac. 388].) ■ Where an agent is authorized to collect money without specifically limiting him to the collection of cash, and a valid check is accepted in lieu of cash, it is equivalent to a payment to the principal although the agent absconds with the proceeds. (*California Stearns Co.* v. *Treadwell*, 82 Cal. App. 553, 563 [256 Pac. 242].)

■ Since the respondent was in actual possession of the Nash car on July 13, 1926, when this action in replevin was commenced, and the final payment was made to the agent of appellant February 26, 1926, the appellant was not entitled to recover judgment. In order for appellant to prevail in the present action, it was necessary for it to establish its claim to immediate and exclusive right of possession of the automobile at the time of the commencement of the action. (5 Cal. Jur. 160, sec. 4; 23 R. C. L. 866, sec. 15; *Boles* v. *Stiles*, 188 Cal. 304 [204 Pac. 848]; *Kenny* v. *Christianson*, 200 Cal. 419, 424 [50 A. L. R. 1297, 253 Pac. 715].) Upon the contrary, the evidence indicating that the respondent had in good faith traded with Bland for the Nash machine, and was not only the owner thereof, but in the actual possession of it at the time of the commencement

of this action, he was entitled to recover judgment in his favor. In the case of *Parks* v. *Franciscus,* 194 Cal. 284, at page 295 [228 Pac. 435, 440], relied upon by the appellant, it is said: "In an action of claim and delivery the claimant is not called upon to establish ownership, merely a right to the possession of the thing, and since the transfer to appellants was not void *ab initio,* in an action of claim and delivery, they might be entitled to recover."

██ The entire balance of the purchase price of the automobile having been paid to the agent of appellant, it was estopped from denying the vendee's title or right of possession upon the ground that the certificate of ownership had not been transferred as required by section 45 of the Motor Vehicle Act, or otherwise. (*Dowd* v. *Russell,* 78 Cal. App. 262 [248 Pac. 293]; *Davies-Overland Co.* v. *Blenkiron,* 71 Cal. App. 690 [236 Pac. 179]; *Boles* v. *Stiles,* 188 Cal. 304 [204 Pac. 848]; *Kenny* v. *Christianson, supra.*)

The judgment is affirmed.

Plummer, J., and Hart, Acting P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 5, 1929, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 4, 1929.

All the Justices concurred.