[L.A. No. 29835. In Bank. Sept. 14, 1971.]

AUDREY R. NAVRIDES, Plaintiff and Respondent, v.
ZURICH INSURANCE COMPANY, Defendant and Appellant.

**COUNSEL**

Haight, Lyon & Smith and William M. Fitzhugh for Defendant and Appellant.

Orloff & Wilner and Robert D. Wilner for Plaintiff and Respondent.

**OPINION**

**SULLIVAN, J.**—In this action against defendant insurance company arising out of the compromise of a personal injury claim made with the company by plaintiff's attorney without her consent, we must decide whether defendant was discharged from liability where its settlement draft after delivery to the attorney was cashed on plaintiff's forged endorsement and the proceeds of the draft appropriated.

Our resolution of the problem is fashioned from basic principles of agency. For the reasons discussed below we conclude, first, that by bringing the present action, plaintiff ratified the unauthorized compromise of her claim, including her attorney's receipt of payment by means of the settlement draft; and, secondly, that by delivering the draft to the attorney, defendant under the circumstances was discharged of all liability, even though the draft was paid on plaintiff's forged endorsement. We, therefore, reverse the judgment.

The facts are undisputed. On February 19, 1962, plaintiff Audrey Navrides was injured on the premises of one Crancer who was insured by defendant Zurich Insurance Company (Zurich). She employed an attorney, Robert S. Forsyth, who filed an action for damages on her behalf. Forsyth negotiated with Zurich a compromise settlement of plaintiff's claim for $9,000. Plaintiff rejected the compromise but Forsyth represented to Zurich that she had approved it. Zurich then delivered to Forsyth for signature a release of all claims, a request for the dismissal of the pending action and a draft dated September 22, 1964, in the sum of $9,000 payable to "Audrey R. Navrides and Robert S. Forsyth, her attorney." Forsyth retained the draft and returned to Zurich the release purportedly signed by

plaintiff, together with the request for dismissal. The latter document was thereupon filed and the action dismissed.

On September 25, 1964, the settlement draft, bearing the purported endorsements of plaintiff and Forsyth, was cashed at the Bank of America and eventually charged to Zurich's account with the Continental Illinois National Bank and Trust Company of Chicago (Continental Bank). Plaintiff's signature on the release and her endorsement on the draft were forgeries. She received no money from the settlement. About a year later, plaintiff discovered that her personal injury action had been dismissed and that the above settlement draft had been delivered to her attorney. She was unable to effect any recovery from the latter.

On December 14, 1965, plaintiff commenced this action against Zurich and the Bank of America;[1] her complaint set forth two separately stated causes of action, the first against Zurich and the second against the bank. Plaintiff's second stated cause of action alleged in substance that the Bank of America paid the Zurich draft, on plaintiff's forged endorsement, collected the amount of the draft from Continental Bank, the drawee, but did not pay any of the proceeds to plaintiff.[2]

The Bank of America's demurrer was sustained with leave to amend and upon plaintiff's failure to do so, the second stated cause of action was dismissed. Plaintiff did not appeal from the dismissal. We are, of course, not concerned with this cause of action on the appeal now before us.

Plaintiff's first stated cause of action against Zurich alleged in substance that the latter for a valuable consideration drew, executed and delivered the draft to plaintiff, that the draft was wrongfully paid by the Bank of America on a forged endorsement, that Zurich "has not paid said check, nor any part thereof to plaintiff, and by reason of said fact, there has been a failure of consideration" and that defendant owed plaintiff the sum of $9,000. The trial court essentially found that all of the material allegations

---

[1] Apparently plaintiff made no attempt to set aside the unauthorized dismissal of her personal injury action. We need not speculate as to the probable success of any such proceedings had they been undertaken. Nevertheless we observe that the law is well settled that an attorney must be specifically authorized to settle and compromise a claim, that merely on the basis of his employment he has no implied or ostensible authority to bind his client to a compromise settlement of pending litigation (*Linsk* v. *Linsk* (1969) 70 Cal.2d 272, 277-278 [74 Cal.Rptr. 544, 449 P.2d 760]; *Bice* v. *Stevens* (1958) 160 Cal.App.2d 222, 231 [325 P.2d 244]) and that clearly he has no authority pursuant to an unauthorized settlement to enter a dismissal with prejudice (*Robinson* v. *Hiles* (1953) 119 Cal.App.2d 666, 672 [260 P.2d 194]).

[2] Although both plaintiff and Zurich in their pleadings referred to the forged instrument as a "check," the trial court in its findings of fact and conclusions of law referred to it as a "draft." No issue is raised as to its designation; we will follow the trial court and call it a "draft."

of the first cause of action were true, that plaintiff did not affix, or authorize anyone to affix, her signature to the draft, and that she was not estopped from asserting that she neither signed nor authorized an endorsement of the draft. From these facts the court concluded simply that (1) plaintiff's signature was a forgery and (2) that Zurich owed plaintiff $9,000 plus interest. Judgment was entered accordingly. This appeal followed.

The trial court's conclusion that plaintiff's signature on the draft was a forgery is amply supported by the findings and the evidence. Unfortunately, however, the court nowhere indicates any legal theory explaining its leap from its findings and first conclusion of law to its second conclusion that Zurich owed plaintiff $9,000 plus interest. It is a fair assumption that the trial judge, relying on former Civil Code section 3104,[3] concluded that the forged endorsement was wholly inoperative and that as a consequence Zurich still owed plaintiff $9,000.

Although Forsyth clearly had no authority, express or implied (see fn. 1, *ante*), to compromise plaintiff's claim, the record before us establishes as a matter of law that plaintiff, by bringing the instant action against Zurich for the $9,000, ratified the settlement. As we shall explain, by so doing she necessarily approved Zurich's delivery of the draft to Forsyth and the latter's delivery to Zurich of the release (on which her signature had been forged) and the request for the dismissal of her action.

It is well settled that a client may ratify the unauthorized actions of his attorney (*Moving Picture etc. Union* v. *Glasgow Theaters, Inc.* (1970) 6 Cal.App.3d 395, 403 [86 Cal.Rptr. 33]; *Redsted* v. *Weiss* (1945) 71 Cal.App.2d 660, 664 [163 P.2d 105]; *Fidelity & Casualty Co.* v. *Abraham* (1945) 70 Cal.App.2d 776, 783 [161 P.2d 689]); that a principal may ratify the forgery of his signature by his agent (*Volandri* v. *Hlobil* (1959) 170 Cal.App.2d 656, 659-660 [339 P.2d 218]; *Kadota*

---

[3]Former Civil Code section 3104 provided in pertinent part: "When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative. . . ."

Former title XV ("Negotiable Instruments") of part 4 of division 3 of the Civil Code, comprising former sections 3082 to 3266d, was repealed in 1963 and superseded by the Uniform Commercial Code, said repeal and new enactment being effective January 1, 1965. (Stats. 1963, ch. 819, pp. 1849, 1997.) Division 3 of the Uniform Commercial Code ("Commercial Paper") represents a substantial revision of the California Negotiable Instrument Law (former Civ. Code, § § 3082-3266d).

Uniform Commercial Code section 3404 which is similar to former Civil Code section 3104 provides: "(1) Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value. [Par.] (2) Any unauthorized signature may be ratified for all purposes of this division. Such ratification does not of itself affect any rights of the person ratifying against the actual signer."

*Fig Assn.* v. *Case-Swayne Co.* (1946) 73 Cal.App.2d 815 [167 P.2d 523]); and that a principal may ratify the unauthorized act of an agent by bringing suit based thereon (*Price* v. *McConnell* (1960) 184 Cal. App.2d 660, 666 [7 Cal.Rptr. 695]).

By virtue of such ratification, there then existed between plaintiff and Zurich a *valid* compromise agreement which was fully performed on the part of plaintiff by Forsyth's delivery of the release and dismissal to Zurich. The true and indeed only tenable theory of plaintiff's action thus emerges: that Zurich owes her $9,000 under the settlement agreement and that she has not been paid. Indeed at oral argument plaintiff's present counsel conceded that by bringing suit against Zurich she had ratified the settlement and was seeking to enforce it.[4] However, inherent in the ratification of the settlement is ratification of Forsyth's authority to settle the claim, which, as we explain, *infra,* necessarily includes authority to receive and collect the payment of the settlement on behalf of plaintiff.

Unfortunately for plaintiff, she cannot stop at this point. ■ She must reckon with the elementary rule of agency law that a principal is not allowed to ratify the unauthorized acts of an agent to the extent that they are beneficial, and disavow them to the extent that they are damaging. If a principal ratifies part of a transaction, he is deemed to ratify the whole of it. (Civ. Code, § 2311; *Price* v. *McConnell, supra,* p. 666; *Warshauer* v. *Bauer Construction Co.* (1960) 179 Cal.App.2d 44, 52 [3 Cal.Rptr. 570]; Rest. 2d Agency, § 96.) The reason for the rule is obvious. Ratification is approval of a transaction that has already taken place. Accordingly the principal has the power to approve the transaction only as it in fact occurred, not to reconstruct it to suit his present needs. As the court said in *Warshauer, supra,* quoting from *Gift* v. *Ahrnke* (1951) 107 Cal.App.2d 614, 623 [237 P.2d 706], "A principal 'cannot split the agency transaction into separate parts, and take the benefits without the burden.' " ■ In the instant case plaintiff, by ratifying Forsyth's settlement of her pending action for damages for personal injuries, necessarily ratified the entire transaction between Forsyth and Zurich, including Forsyth's receipt of the settlement draft.[5]

---

[4] At oral argument before us, plaintiff's counsel first took the position that in the instant action plaintiff was "suing on the negotiable instrument of the draft" but subsequently conceded that she was actually suing on the underlying settlement agreement under which the draft was issued. Plaintiff has not provided any explanation nor cited any authority supporting a theory of recovery on the draft alone rather than on the underlying agreement.

[5] We emphasize that by commencing the present action plaintiff ratified the entire transaction *between Forsyth and Zurich.* But her ratification did not necessarily extend beyond the consummation of the settlement so as to include events transpiring after

We, therefore, turn to consider whether Zurich's delivery of the draft to Forsyth discharged the insurance company from all liability to plaintiff, notwithstanding the fact that the draft was subsequently cashed on plaintiff's forged endorsement and its proceeds converted. We begin by adverting to established principles of agency dealing with the authority of agents to receive payment.

An attorney has authority "To receive money claimed by his client in an action or proceeding during the pendency thereof . . . and upon payment thereof, and not otherwise, to discharge the claim . . . ." (Code Civ. Proc., § 283, subd. 2.) ■ This statute, enacted in 1872, codifies the well-established proposition of law that an attorney who has authority to settle or collect a claim also has authority to receive payment in money and that such payment to the attorney discharges the claim, even if the attorney absconds with the money. (*Weiner* v. *Luscombe* (1937) 19 Cal. App.2d 668, 671 [66 P.2d 151]; *Ely* v. *Liscomb* (1914) 24 Cal.App. 224, 228 [140 P. 1086]; *Bailey* v. *United States* (9th Cir. 1926) 13 F.2d 325, 327; *Brown* v. *Grimes* (1921) 74 Ind.App. 655 [129 N.E. 483]; see also *Wherry* v. *Rambo* (1950) 97 Cal.App.2d 569, 571 [218 P.2d 142].)

■ Since checks and drafts are the usual and ordinary means of transferring money in the transaction of business (*Greenzweight* v. *Title Guar. & Tr. Co.* (1934) 1 Cal.2d 577, 581 [36 P.2d 186]; *Mefford* v. *Security Title Ins. Co.* (1962) 199 Cal.App.2d 578, 584 [18 Cal.Rptr. 877]; *California Stearns Co.* v. *Treadwell* (1927) 82 Cal.App. 553, 558 [256 P. 242], cited with approval in *Greenzweight, supra*), in California the rule prohibiting payment in any form except money to an agent authorized to collect has been relaxed to permit payment by check. (*California Stearns*

---

Forsyth received the draft and encompass ratification of the unauthorized endorsement of her signature on the draft.

A payee, whose endorsement has been forged subsequent to the delivery of a check to the payee or his agent, can sue the collecting bank in conversion. Since a forged endorsement is wholly inoperative, the collecting bank acquires no right to retain the check or to enforce its payment against the drawee bank by virtue of the forged endorsement. However, the payee may in a limited sense ratify the bank's *collection* of the amount of the check from the drawee bank and then sue the collecting bank in conversion for paying this amount to the forger. (*Fabricon Products* v. *United Cal. Bank* (1968) 264 Cal.App.2d 113, 116-117 [70 Cal.Rptr. 50]; *Indiana Plumbing Supply Co.* v. *Bank of America* (1967) 255 Cal.App.2d 910, 915 [63 Cal.Rptr. 658]; *Palo Alto etc. Assn.* v. *First Nat. Bank* (1917) 33 Cal.App. 214 [164 P. 1124].) Thus, the payee is allowed a selective ratification as it were; he may ratify the collection of the amount of the check from the drawee bank by the collecting bank on the forged endorsement, but is not required to ratify the forged endorsement in toto and thereby approve payment to the forger. We know of no reason why this doctrine of selective ratification is inappropriate in this case, so we need not hold plaintiff to ratification of her unauthorized endorsement on the draft.

*Co.* v. *Treadwell, supra,* pp. 558-559; *de St. Germain* v. *Watson* (1950) 95 Cal.App.2d 862, 869 [214 P.2d 99]; *Mefford* v. *Security Title Ins. Co., supra.*)

However, the mere giving of a check payable to the agent does not constitute payment. (*Hale* v. *Bohannon* (1952) 38 Cal.2d 458, 467 [241 P.2d 4].) ■ "A check is never a payment of the debt for which it is given until the check itself is paid or otherwise discharged, unless expressly agreed to be taken in payment." (*Utah Constr. Co.* v. *Western Pac. Ry. Co.* (1916) 174 Cal. 156, 166 [162 P. 631]; see also *Comptoir D'Escompte* v. *Dresbach* (1888) 78 Cal. 15, 21-22 [20 P. 28]; *South S.F. Pkg. etc. Co.* v. *Jacobsen* (1920) 183 Cal. 131, 134 [190 P. 628]; *California Stearns Co.* v. *Treadwell, supra;* 70 C.J.S. pp. 233-236.) ■ But once the check is paid, the payment of the underlying debt which was theretofore conditional becomes absolute and relates back to the date of the delivery of the check (*California Stearns Co.* v. *Treadwell, supra; Hale* v. *Bohannon, supra; Hooker* v. *Burr* (1902) 137 Cal. 663, 668 [70 P. 778]; 70 C.J.S. p. 235).

■ The foregoing authorities support the now-settled rule that where an agent authorized to collect a debt owing his principal accepts in lieu of cash a valid check *payable to the agent,* the debtor is discharged upon payment of the check, although the agent absconds with the proceeds, since payment to the agent is equivalent to payment to the principal. (*California Stearns Co.* v. *Treadwell, supra,* 82 Cal.App. 553, 563; see also *Pacific Acceptance Corp.* v. *Jones* (1928) 95 Cal.App. 365, 369 [272 P. 1084].) ■ To sum up, where an attorney authorized to collect for his client receives from the debtor money or in lieu thereof a check payable to the attorney alone, the debtor is discharged from liability upon receipt of the money or payment of the check as the case may be.

The crucial question presented to us in the instant case is whether the above rule applies where the attorney receives a check payable to the *client* or to the *client* and the *attorney together.* An answer to this question, we feel, can be obtained by harmonizing pertinent principles of agency and negotiable instruments. To this problem and its solution we now turn our attention.

Preliminarily, we put aside one situation when the rule obviously applies. ■ If an agent with authority to receive payment by check payable to his principal also has authority to endorse his principal's name, it is clear that payment of the check will discharge the debtor. This situation is legally identical with that where the check is payable solely to the

agent, since in each instance the agent has the power to endorse and negotiate the instrument.[6]

Where, however, the agent, without any authority to do so, endorses his principal's name on a check, certain rules of the negotiable instruments law come into play. Former section 3104 of the Civil Code, applicable to the instant case (see fn. 3, *ante*), provided: "When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority." (See Com. Code, § 3404.)

Former section 3122 of the Civil Code provided: "Where an instrument is payable to the order of two or more payees or indorsees who are not partners, all must indorse, unless the one indorsing has authority to indorse for the others." (See Com. Code, § 3116.) Thus, whether a check is made payable to the principal alone or to the principal and agent together, a forged or unauthorized endorsement is "wholly inoperative."

It is plaintiff's position here, as it was in the trial court, that the instant case is controlled by the above sections of the negotiable instruments law in effect at the time of the transaction (see fn. 3, *ante*) and that since the forged endorsement was a nullity, Zurich remained indebted to her for the amount of the settlement. In support of this position plaintiff relies heavily on *Helgeson* v. *Farmers Ins. Exchange* (App. Dept. Superior Court, San Francisco 1953) 116 Cal.App.2d Supp. 925 [255 P.2d 484][7] and

---

[6]Civil Code section 3100 provides: "The signature of any party may be made by a duly authorized agent. No particular form of appointment is necessary for this purpose; and the authority of the agent may be established as in other cases of agency." The same rule obtains under the Uniform Commercial Code. (Com. Code, § 3403.)

Forsyth was not specifically authorized to endorse negotiable instruments on behalf of plaintiff. Such authority cannot be inferred from his ratified authority to settle the claim with Zurich and the concomitant authority to receive and collect payment of the settlement amount, as these latter duties can be performed fully without exercising a power to endorse negotiable paper on behalf of plaintiff. (*Arcade Realty Co.* v. *Bank of Commerce* (1919) 180 Cal. 318 [181 P. 66, 12 A.L.R. 102].)

[7]In *Helgeson* the client authorized the attorney to negotiate a settlement of her claim with the insurance company and specifically approved the settlement offer obtained by him. The insurance company issued and delivered two drafts to the attorney in the amount of the settlement, payable to the client and the attorney. The attorney forged his client's signature, cashed the checks and absconded with the proceeds. The appellate department of the superior court, although making no mention of former Civil Code sections 3104 and 3122, held that since the attorney did not have the ostensible authority to endorse his client's name on the check, the insurance company was liable to the client for the full amount of the settlement.

*Cignetti* v. *American Trust Co.* (1956) 139 Cal.App.2d 744 [294 P.2d 490])[8] which hold that where a check delivered for a debt is thereafter paid on a forged endorsement and the forger absconds with the proceeds the underlying obligation is not discharged and the maker must pay again. The parties have not cited, nor has our independent research disclosed, any other reported California decisions directly involving the issue now presented to us.

It is Zurich's position that the above code sections do not control the case and that applicable principles of agency do not succumb to the rules of the negotiable instruments law. Rather, Zurich argues, a proper correlation of these competing principles is found in section 178 of the Restatement Second of Agency the effect of which is to relieve the maker where the payee's endorsement has been forged by his agent authorized to receive the check.

We shall explain why the rules of negotiable instruments should not be considered paramount in the present context. It does not follow, as plaintiff would have it, that because the payee's endorsement is forged by his agent, discharge of the maker's underlying obligation is thereby legally unattainable. The *Helgeson* and *Cignetti* cases which appear to be the only California cases on the point not only seem to have made the same assumption but also in the process to have failed to consider a long line of authority to the contrary which is now encapsulated in section 178 of the Restatement Second of Agency. We proceed to explain why this section rests upon sounder legal underpinnings and should be applied to the instant case.

We start with the early case of *Sage* v. *Burton* (1895) 84 Hun. 267 [32 N.Y.S. 1122]. There it was held that where a debtor delivers to his creditor's agent, who is duly authorized to receive it, a check payable to

---

[8]In *Cignetti,* a real estate agent and loan broker arranged to have plaintiff make a secured real estate loan. Over a period of years, the agent collected the loan payments and disbursed them to the plaintiff. While the plaintiff was out of the country, the agent without authority refinanced the loan, executed a reconveyance of the trust deed and secured from the title company a check payable to the plaintiff for the unpaid principal amount of the loan. The agent endorsed the plaintiff's name, signed her own as trustee and absconded with the proceeds, although for a time continuing to remit monthly "payments" to the plaintiff in order to conceal the transaction. In an action against the drawer-title company alone the trial court entered judgment for the defendant. The Court of Appeal reversed, concluding that there was no evidence to support the trial court's finding that the loan broker was the plaintiff's agent not only for the purpose of collecting the loan payments but also for the purpose of endorsing the title company's check. In holding that the power to endorse commercial paper does not follow merely from the authority to collect a debt, the appellate court cited *Helgeson* for the proposition that the drawer who has paid a forged draft must pay again.

the creditor for the amount of his debt, and the check is subsequently paid by the bank on which it is drawn, the debtor's liability to the creditor is thereby discharged, though the agent without authority endorsed the check and applied the proceeds to his own use. The court declared that "after [the debtor] has parted with the check to the creditor, or his agent, he has no further duty in the matter, except to see that funds are in the bank on which it is drawn for its payment. 'A check given in payment, and afterwards paid, becomes a valid payment as of the date of its receipt.' 18 Am. & Eng. Enc. Law, p. 147, and cases there cited. The plaintiffs, having authorized the agent to receive the check, and thus removing it beyond the control of the defendant, took, as between them and the defendant, the risk of the acts of their own agent. . . ." and that the creditors "having authorized the agent to receive the check, and thus removing it beyond the control of the defendant, took, as between them and the defendant, the risk of the acts of their own agent . . . ." (*Sage* v. *Burton, supra, at* pp. 1122-1123.)

The twofold justification for this rule, which amply demonstrates its wisdom, is best articulated in two similar cases. In *Burstein* v. *Sullivan* (1909) 134 App.Div. 623 [119 N.Y.S. 317], one Melle, the general manager of a garage, had authority to render bills and receive payments, but not to sign checks. He presented a bill to defendant, who delivered to the manager a check payable to the garage for the amount of the bill. Melle endorsed the check by using a rubber stamp of the firm name in connection with which he signed his name as manager. The court said: "A payment to Melle in cash would have been a payment to the plaintiffs, though he had stolen the money; and the defendant should not be compelled to pay twice, or subjected to the hazard of a lawsuit with the bank, for having taken the precaution to protect the plaintiffs by making a check payable to their order. It is true that the delivery of a check or of a note does not of itself discharge the indebtedness. If the check or the note is not paid, the creditor may sue on the original indebtedness. . . . But where a debtor delivers his check to the creditor or his agent, duly authorized to receive it, and has funds in the bank to meet the check, the transaction, as between the debtor and the creditor, should be treated as a payment, precisely as though cash had been paid, even though the agent forges an indorsement and steals the money." (119 N.Y.S. 317, 319.)

In *McFadden* v. *Follrath* (1911) 114 Minn. 85 [130 N.W. 542] the court explained the justification for this rule in terms of business practice and its need for negotiable paper. "It would be a novel burden if the drawer of a check, given in the usual course of business, to the authorized agent of the payee, upon such check being indorsed by such agent, were

charged with the duty of determining that the endorsement on the check was authorized. To establish such a rule would make payment by check a matter of uncertainty and some risk. . . . If the check is improperly paid, because of the dishonesty of the agent that the payee intrusts with the check, and the negligence of the bank, there would seem to be no sufficient reason for placing the responsibility therefor on the drawer of the check. The drawer of the check parted with control over it in the usual course of business, and in this case in the exact manner the payee requested. If either the drawer or payee must suffer because of the dishonesty of the agent, the one who designated him to receive the check and intrusted him with it should suffer, rather than the drawer, who had no voice in the selection of the agent, and who is in no way responsible for his act." (130 N.W. at p. 544.)

This rule has been applied where the agency relationship is that of attorney and client. In *Monacelli* v. *Traeger* (1925) 239 Ill.App. 30, a sheriff who conducted a judicial sale to satisfy the lien of a judgment delivered a check payable to the judgment creditor to the creditor's attorney, who forged his client's endorsement and absconded with the proceeds. The sheriff was held discharged from his obligation.

*Patterson* v. *Southern Ry. Co.* (1930) 41 Ga.App. 94 [151 S.E. 818], involved the situation where an attorney with authority to settle his client's claim received a check payable to himself and the client, forged the client's signature and absconded with the proceeds. The court held that even though the attorney had no authority to endorse the check, "the transaction amounted to payment to the attorney of the amount of cash represented by the check and actually received thereon" (*id.* at p. 819) and thus was payment of the client's claim. Upon rehearing, the two sections of the Negotiable Instruments Act which provided that the unauthorized signing by one of two or more payees of the name or names of the others amounted to nothing more than a forged endorsement and was wholly inoperative (in California, Civ. Code, §§ 3122 and 3104, respectively) were urged upon the court as requiring a different result. The court responded that "the defendant had the right, upon the authorized settlement being agreed upon, to pay over the money to the recognized attorney in cash, or to settle the same by a check made to the plaintiff's attorney alone . . . . The plaintiff, through his attorney, received the amount agreed upon by the compromise. [Par.] Since it was altogether unnecessary to embody the name of the client in the check, and since his name was put there solely through the voluntary and unnecessary act of the defendant, the plaintiff acquired no contractual right against the defendant by reason of his name having thus been added to the face of the check, in addition to that of the attorney employed to represent him, and the status between the parties remained

the same as existed prior to the execution of the check. Consequently, the payment of the amount represented by the check, either to the client or his attorney duly authorized to receive it, amounted to a settlement of the claim . . . . [Par.] As we conceive the question involved, the section of the Negotiable Instruments Act cited above has no applicability." (151 S.E. at p. 820.)

In *Zidek* v. *West Penn Power Co.* (1941) 145 Pa.Super. 103 [20 A.2d 810], the plaintiff employed an attorney to handle her claim against the defendant for damages for personal injuries. The attorney with full authority to settle the claim entered into a settlement agreement with the defendant, delivered a forged release and received defendant's draft payable to himself and the plaintiff. He forged the plaintiff's endorsement on the draft and absconded with the money. The court held that the attorney's express authority to settle the claim carried with it the implied authority to collect the payment and that, although the attorney had no authority to endorse the draft, the defendant had nevertheless paid the plaintiff and was discharged under the settlement agreement.

The rule articulated by the line of authority[9] of which the foregoing decisions are a part has been expressly adopted in the Restatement Second of Agency.[10] Section 178(2)[11] thereof provides: "If an agent who is authorized to receive a check payable to the principal as conditional payment forges the principal's endorsement to such a check, the maker is relieved of liability to the principal if the drawee bank pays the check and charges the amount to the maker."

Comment (c) on subsection (2) states: "If a debtor having an account

---

[9]The full line of relevant authority is: *Sage* v. *Burton, supra; Allen* v. *Tarrant & Co.* (1896) 7 App.Div. 172 [40 N.Y.S. 114]; *Burstein* v. *Sullivan, supra; McFadden* v. *Follrath, supra; Morrison* v. *Chapman* (1913) 155 App.Div. 509 [140 N.Y.S. 700]; *Monacelli* v. *Traeger, supra; Mills* v. *Hurley Hardware & Furniture Co.* (1917) 129 Ark. 350 [196 S.W. 121]; *Indemnity Mut. Marine Assur. Co.* v. *Powell & O'Rourke G. Co.* (1925) 216 Mo.App. 673 [271 S.W. 538]; *Patterson* v. *Southern Ry. Co., supra; Union House Furnishing Co.* v. *National Bank of Commerce* (1932 Mo.App.) 53 S.W.2d 1067; *Franciscan Hotel Co.* v. *Albuquerque Hotel Co.* (1933) 37 N.M. 456 [24 P.2d 718, 726]; *Weiss* v. *District Title Ins. Co.* (1941) 121 F.2d 900, 903 [74 App.D.C. 126]; *Zidek* v. *West Penn Power Co., supra; Strickland Transp. Co.* v. *First State Bank of Memphis* (1948) 147 Tex. 193 [214 S.W.2d 934, 938]; but see *Siegel* v. *Kovinsky* (1916) 93 Misc. 541 [157 N.Y.S. 340] and *Szwento Juozupo* v. *Manhattan Sav. Inst.* (1917) 178 App.Div. 57 [164 N.Y.S. 498], which, though contra, have never been followed.

[10]The first edition of the Restatement of Agency which appeared in 1933 gave no recognition to the rule (see § 177).

[11]It is illuminating to read subsection (2) in connection with subsection (1) which states: "If an agent, authorized to receive only money in payment of a debt, receives a check or other thing from the debtor and obtains the amount of the debt from the negotiation or sale of the thing received, the debt is paid."

at a solvent bank sufficient to pay a check, gives to an authorized agent a check payable to the principal in accordance with business customs as conditional payment, he has performed his obligation, and any loss caused by delay because of the conduct of the agent is at the creditor's risk. *Thus, if the drawee bank cashes the check after a forgery and embezzlement by the agent and charges the amount to the debtor, the latter is relieved of his debt.* The creditor then would be subrogated to the right of the debtor against the bank. If, in the meantime, the bank becomes insolvent, it is the creditor and not the debtor who loses." (Italics added.)

We are convinced that the rule stated in subsection 2 of section 178 and expounded in the series of cases referred to above is clearly correct. We, therefore, hold it applicable in California. To the extent that they are inconsistent with our holding here we disapprove *Helgeson* v. *Farmers Ins. Exchange, supra,* 116 Cal.App.2d Supp. 925 and *Cignetti* v. *American Trust Co., supra,* 139 Cal.App.2d 744.

We now apply the foregoing rule to the case at bench. As we have explained, plaintiff by bringing suit against Zurich ratified the compromise settlement of her claim by her attorney, Forsyth, and thus approved his receipt of payment by means of the settlement draft. It is uncontested that Continental, the drawee bank, paid the draft and charged the amount thereof to Zurich.

Therefore the only element of proof remaining to justify application of the rule is proof that Forsyth forged plaintiff's endorsement. Although the record establishes by uncontradicted evidence that Zurich delivered the draft to Forsyth on September 22, 1964 and that on September 25, only three days later, it was negotiated at the Bank of America bearing Forsyth's signature and plaintiff's forged endorsement, plaintiff would assume an attitude of bland detachment in respect to the last mentioned circumstance. Plaintiff boldly asserts that there is no direct evidence in the record that Forsyth forged her signature and therefore that it is impermissible to find that Forsyth forged her endorsement.

We disagree for several reasons. First, we do not think that plaintiff, who had the burden of proving all facts essential to her recovery, can brush aside this serious lacuna in the evidence with the claim that in this posture of the case proof as to the conduct of her own attorney should be Zurich's responsibility. Second, contrary to plaintiff's claim there is sufficient evidence in the record to justify the inference that Forsyth *did* forge plaintiff's endorsement on the draft. It was Forsyth who received from Zurich the release of all claims and the request for the dismissal of the action and thereafter returned them to Zurich. There is no evidence that anyone else had

control of these documents during the interval they were delivered to Forsyth for execution and returned by him purportedly signed by the proper parties. It is a reasonable inference that it was he who forged plaintiff's signature on the release. Nor is there any evidence that any other person had control of the draft during the period between its receipt from Zurich by Forsyth and its being cashed by some unidentified person at the Bank of America. We think it is a reasonable inference that he also forged the endorsement of the draft. In addition Zurich introduced into evidence a copy of plaintiff's verified complaint filed in a separate action brought by her against Forsyth in which she alleged that Forsyth had converted the proceeds of the draft to his own use. Plaintiff on the other hand introduced no evidence at all to prove that Forsyth was not the forger or at least to dissipate the foregoing inferences. Third, and finally, the case seems to have been tried upon the assumption—accepted, if not formally expressed, by the parties—that Forsyth forged plaintiff's signature both on the release and the draft and absconded with the proceeds.[12]

Upon application of the foregoing rule of agency we conclude that there is no basis in the record before us upon which to sustain the judgment.

The judgment is reversed.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

Appellant's petition for a rehearing was denied October 14, 1971.

---

[12]At the beginning of the trial there was the following colloquy with plaintiff's counsel.

"THE COURT: Where is Robert Forsyth: Long gone?

"MR. WILNER: [Plaintiff's attorney.] He, your Honor, did serve some time in the penal institutions of the State of California and we were unable to locate him after the deposition was taken.

"THE COURT: We don't need him here. I was just curious. You wonder why a lawyer will go sour for that kind of loot. I mean, you know, Jiminey Christmas, it cost him more than that to go through law school.

"MR. WILNER: Well, I have been informed that this was not the only matter."