**Stanley E. HOLMES, Plaintiff,**

v.

**TELECREDIT SERVICE CORPORA-
TION, a Delaware Corporation,
Defendant.**

**Civ. A. No. 88–62 MMS.**

United States District Court,
D. Delaware.

May 4, 1990.

Sandra E. Messick, UAW Legal Services
Plan, Newark, Del., for plaintiff.

Sherry Ruggiero, Tybout, Redfearn &
Pell, Wilmington, Del., for defendant.

OPINION

MURRAY M. SCHWARTZ, Senior
District Judge.

Plaintiff Stanley E. Holmes brought this
action in February 1988, seeking damages
from defendant Telecredit Services Corp.
("Telecredit") for alleged violations of the
Fair Debt Collection Practices Act, 15 U.S.
C.A. §§ 1692 *et seq.* ("FDCPA" or "the
Act"). The case was referred to Magis-
trate Sue L. Robinson in April 1988. On
May 31, 1988 Telecredit moved for dismis-
sal of the action under Federal Rule of
Civil Procedure 12(b), arguing that it is not
a "debt collector" within the meaning of
section 1692a(6) of the Act and hence the
FDCPA does not apply to its actions. On
May 31, 1989 Magistrate Robinson found
that Telecredit is a "debt collector" subject
to the restrictions of the FDCPA, and rec-
ommended denial of defendant's motion.
Report and Recommendation of the Magis-
trate (Dkt. 24). The Magistrate treated
defendant's motion as a motion to dismiss
for lack of subject matter jurisdiction un-
der Rule 12(b)(1). Telecredit filed objec-
tions to the Magistrate's findings on the
merits on June 15, 1989. (Dkt. 26). Plain-
tiff Holmes filed a response to defendant's
objections on June 28, 1989. (Dkt. 27).
The parties have since stipulated that on *de
novo* review the Court should treat this
matter as a motion to dismiss for failure to
state a claim under Fed.R.Civ.P. 12(b)(6).
Stipulation of the Parties (Dkt. 28). Since
both parties have submitted information
beyond the pleadings for the court's consid-
eration, Telecredit's motion will be treated
as a motion for summary judgment under
Rule 56.[1]

---

1. The better approach is to take jurisdiction and
 decide the case on the merits, rather than to
 treat matter as a question of subject matter
 jurisdiction. *See, e.g., Wheeler v. Hurdman,* 825
 F.2d 257 (10th Cir.), *cert. denied,* 484 U.S. 986,
 108 S.Ct. 503, 98 L.Ed.2d 501 (1987); *see also
 Martin v. United Way of Erie County,* 829 F.2d

445, 447 (3d Cir.1987) (determination of wheth-
er defendant United Way was an "employer" or
engaged in "industry affecting commerce" un-
der the Age Discrimination in Employment Act
should be resolved on the merits rather than as
a matter of subject matter jurisdiction); 2A J.

The parties have had opportunity for further discovery and briefing, which is now completed. I agree with Magistrate Robinson that defendant Telecredit is a debt collector within the meaning of the FDCPA. In light of the changed procedural posture of this case since the time the Magistrate issued her report and recommendation, however, I will set forth my views on the merits of Telecredit's motion.

## FACTS

Defendant Telecredit is a computerized check authorization and purchase service. Appendix to Defendant's Opening Brief at 2 (Dkt. 11A) (hereinafter cited as "DA-____").[2] Its subscribers are mainly retail establishments and banks. DA-2. When a consumer presents a check to one of defendant's subscribers, the subscriber contacts Telecredit. Telecredit consults its computerized check authorization file and advises the subscriber whether to accept or decline the check based upon the information in its records concerning the consumer's check writing history. DA-2.

In addition, Telecredit enters into agreements with its subscribers to purchase up to a certain sum any checks authorized by Telecredit that are returned unpaid by the maker's bank. DA-4-5 (form for check purchasing agreement). Once Telecredit purchases the instrument from its subscribers, it initiates collection proceedings on its own behalf. DA-2. Any sums recovered are payable to Telecredit. Exh. B, Defendant's Supplemental Brief (Dkt. 21) (money order from plaintiff payable to Telecredit).

In this case, plaintiff Holmes on August 21, 1987 presented a check in the amount of $315.00 to Union Park Pontiac, a Tele-credit subscriber. Telecredit authorized the check, which was subsequently returned unpaid. Pursuant to its check purchasing agreement with Union Park Pontiac, Telecredit purchased the instrument and began collection efforts. Defendant's Opening Brief at 4 (Dkt. 11); DA-2. Telecredit's collection efforts apparently involved numerous contacts with plaintiff including letters sent demanding payment on or about October 15, October 26 and November 2, 1987. Amended Complaint ¶ 5 (Dkt. 7). Holmes eventually paid the debt, and the record of the dishonored check was removed from Telecredit's check authorization file. DA-2. Holmes then brought this suit alleging that Telecredit committed various violations of the FDCPA.

## DISCUSSION

■ The Fair Debt Collection Practices Act imposes civil liability only on "debt collectors." 15 U.S.C.A. § 1692k (1982); *In re Scrimpsher*, 17 B.R. 999, 1011 (Bankr.N.D.N.Y.1982). Consequently, if Telecredit is not a "debt collector" within the meaning of the Act, the FDCPA is inapplicable to its actions and its motion for summary judgment must be granted. The FDCPA defines "debt collector" generally as:

(6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . .

Moore, J. Lucas & G. Grothers, *Moore's Federal Practice* ¶ 12.07 [2.–1] (1989).

**2.** There has been some question as to whether the materials contained in the Appendix to Defendant's Opening Brief are properly entered into the summary judgment record. I hold that they are. The contents of the letter to plaintiff's attorney from Tom Stubbs, the Vice President of Consumer Relations for Telecredit, Appendix to Defendant's Opening Brief at DA-2-3, have been incorporated by reference into Mr. Stubbs' affidavit. *Id.* at DA-1. I shall consider the contents of the letter as the sworn testimony of Mr. Stubbs in his affidavit.

The sample check purchase agreement ("Welcome Check Purchase Agreement") appended to Telecredit's Opening Brief, *Id.* at DA-4-5, is a document referred to in Mr. Stubbs' affidavit. *Id.* at DA-1. It is properly attached as a sworn copy under Rule 56(e). The court is aware that this document is not the actual agreement; however, the parties have stipulated that the "Welcome Check Purchase Agreement" is an identical copy of the form agreement executed between Telecredit and its subscriber Union Park Pontiac. Stipulation of the Parties (Dkt. 28).

15 U.S.C.A. § 1692a(6). The Act then lists numerous exceptions to the general definition. *See id.* § 1692a(6)(A)–(F). Telecredit argues it is not a debt collector because its activities do not come within the general definition of debt collector set forth above, or in the alternative, because one or more of the exceptions listed by the Act apply.

 Telecredit first contends that as a check authorization service, it is not a "business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts...." Instead, it argues its primary function is "to provide services to retailers by authorizing or declining to authorize checks for purchase." Defendant's Opening Brief at 9 (Dkt. 11). Although "[t]he primary persons intended to be covered [by the Act] are independent debt collectors," S.Rep. No. 95–382, 95th Cong., 1st Sess., *reprinted in* 1977 U.S. Code Cong. & Admin.News 1695, 1697, Congress did not limit the Act to those entities whose sole or principal purpose is debt collection. Instead, Congress extended coverage of the Act to entities that regularly collect or attempt to collect debts as well. For instance, a mortgage servicing company is not considered a debt collector when it acquires loans originated by others and not in default at the time acquired. However, to the extent the mortgage servicing company receives delinquent accounts for collection it is a debt collector with respect to those accounts. 8 K. Lapine & B. Bash, *Banking Law.* § 155.07[3] at 155–39–40 (1989); *see also* S.Rep. No. 95–382, 95th Cong., 1st Sess., *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1698. The word "regularly" means "normally, usually, or customarily." 8 K. Lapine & B. Bash, *supra,* § 155.07[3] at 155–35–36 (citing FTC Interpretive Letter No. 00073, Jan. 3, 1978). The Act was not intended to cover an entity that collects a debt for another in an isolated instance, but it does apply to entities that collect debts for others in the regular course of business. S.Rep. No. 95–382, 95th Cong., 1st Sess., *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1697–98.

From September of 1986 through September of 1989, Telecredit purchased 1,826,877 checks or drafts from its subscribers. Updated Answers to Interrogatories, Plaintiff's Supplemental Letter Memorandum (Nov. 6, 1989). This works out to an average of 608,959 checks purchased in each of those years. Consequently, the purchase and collection of Holmes' debt is not an "isolated instance," of collection not intended to be covered by the Act. S.Rep. No. 95–382, 95th Cong., 1st Sess., *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1697. Furthermore, check purchasing is a service provided as part and parcel of Telecredit's agreements with many of its subscribers. *See* Appendix to Plaintiff's Supplemental Brief at 17–44 (Dkt. 27) (various Telecredit form contracts). Clearly, Telecredit regularly attempts to collect on dishonored checks purchased from its subscribers.

Telecredit's next argument is that it is not a debt collector because it is not collecting or attempting to collect debts owed or due *another.* Telecredit argues that, since it does not begin collection efforts until after it has purchased the dishonored checks, it is collecting or attempting to collect its own receivables and not debts owed to others. In order to adequately consider this argument, the court must simultaneously consider Telecredit's related argument that, even if it meets the threshold definition of debt collector, it falls within the Act's exclusion for creditors.[3] A creditor is defined by the Act as:

any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an

---

**3.** The Act excludes from the definition of debt collector "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C.A. § 1692a(6)(A). It seems clear from the legislative history of the Act that Congress intended that this exclusion cover creditors themselves as well as their employees. *Kimber v. Federal Financial Corp.,* 668 F.Supp. 1480, 1484 (M.D.Ala. 1987) (citing S.Rep. No. 95–382, 95th Cong., 1st Sess., *reprinted in* 1977 U.S.Code Cong. & Admin. News 1695).

assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another. 15 U.S.C.A. § 1692a(4). Thus the court must determine whether Telecredit is a creditor, and if so, whether its activities with regard to Holmes' check fall under the exception for assignees.

The case law addressing whether entities collecting on debts to which they have title are "debt collectors" is sparse. In *Alexander v. Moore & Associates, Inc.*, 553 F.Supp. 948 (D.Hawaii 1982), the court considered whether a service which guarantees for landlords the payment of tenants' security deposits ("RENTCHECK") could be a debt collector. In that case, the plaintiff refused to pay her landlords' claim for repairs and cleaning after she vacated her apartment. The landlords, subscribers of RENTCHECK, submitted their claims to the service. RENTCHECK paid the landlords, took assignment of the claims, and attempted to collect. *Id.* at 949. The plaintiff later sued RENTCHECK under the FDCPA. RENTCHECK argued that it owned the debt and therefore could not be a debt collector within the coverage of the Act. The court agreed and briefly reasoned:

> Plaintiffs argue that RENTCHECK is a debt collector because it regularly collects the debts owed by tenants to landlords. The record, however, shows only that RENTCHECK sought to collect on amounts it had to pay the landlords pursuant to its rent guarantee. These are not debts "owed or due another". There is nothing to show, for example, that RENTCHECK sought to collect damages incurred by landlords which were in excess of such payments.

*Id.* at 954–55.

In *Kimber v. Federal Financial Corp.*, 668 F.Supp. 1480 (M.D.Ala.1987), the court reached the opposite conclusion in determining whether a corporation formed solely for the purpose of collecting the accounts receivable of a bankrupt company could be considered a debt collector. In a thoughtful opinion, Judge Thompson started from the definition of creditor in section 1692a(4) and worked backward to section 1692a(6)'s definition of debt collector:

> The first part of § 1692a(4) defines the universe of creditors as either those who originate a debt or those to whom a debt is owed; in either case, the creditors are not collecting the debts for others. The second part of § 1692a(4), the assignee exception, then purports to exclude from this universe those persons who collect assigned or transferred debts that are already in default when assigned or transferred. To say that this exception applies only to those who collect debts for others would be to render the exception superfluous and meaningless; those who collect debts for others are not in the original definitional universe, and there is therefore no need to exclude them. Rather, the excluding factors in the exception are that the debts are the result of an assignment or transfer and that the debts were already in default at the time of assignment or transfer. With the phrase "for another" at the end of the exception, Congress merely intended that the debts should have *originally* belonged to another and that the creditor was therefore in effect a third-party or independent creditor.
>
> The phrase "owed or due another" has a similar meaning in the Act's definition of "debt collector" in § 1692a(6). As stated, the first part of § 1692a(4) defines the universe of creditors as those who collect debts for themselves. Section 1692a(6)(A) purports to exclude these creditors from the general definition of debt collector. There would be no need to exclude creditors—those who collect debts for themselves—from the general definition of debt collector unless that general definition included those who collect debts for themselves.

*Id.* at 1485.

I am persuaded by Judge Thompson's reasoning in *Kimber*. The definitional section of the FDCPA is not a model of clarity. Nevertheless, "[i]n reading it, ... one cannot take a clause out of context and give it a meaning which is inconsistent with the overall purpose of the legislation. Rather, if the definitional section is ambiguous our

effort should be to interpret it in a manner which preserves rather than destroys the legislative purpose...." *Heredia v. Green,* 667 F.2d 392, 399 (3d Cir.1981) (Gibbons, J., dissenting). In this case, the original debt was owed to Union Park Pontiac, not Telecredit. By use of the language "owed or due another" Congress was attempting to exclude those entities that extend credit from the effects of the Act. Congress intended to protect borrowers from *"third persons* who regularly collect debts for others." S.Rep. No. 95–382, 95th Cong., 1st Sess., *reprinted in* 1977 U.S. Code Cong. & Admin.News 1695, 1697 (emphasis added). Telecredit is a third party collecting a debt originally owed to another. Although Telecredit may facilitate the transactions of its subscribers, it is not in the business of extending credit. It cannot escape the spirit of the Act merely by the technicality of purchasing the debt upon default so that title technically rests in itself.[4]

Furthermore, Telecredit is not a "creditor" within the meaning of section 1692a(4) because it falls under the exception for assignees. Section 1692a(4) excludes from the definition of creditor "any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt *for another."* Title to the instrument was not transferred to Telecredit until after the check had been dishonored so that by the time Telecredit received title to the debt, it was "in default." In addition, the purpose of Telecredit's agreement with Union Park Pontiac is the facilitation of transactions by check. This would include facilitation of collection in the event a check is dishonored. Since Telecredit received title to the instrument pursuant to its agreement with Union Park Pontiac, the debt was transferred to it for the purpose of facilitating collection for another.

Telecredit also argues that it is not a debt collector because it falls under the exclusion for "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... (ii) concerns a debt which was originated by such person...." 15 U.S.C.A. § 1692a(6)(F). By virtue of authorizing the check, Telecredit argues that it participated in the origination of the debt and that it acquired an interest in the debt prior to default. The Act does not define "originated." However, it seems clear the term contemplates situations beyond those involving the original lender. The original lender is covered by section 1692a(6)(A)'s exception for creditors. If the exception in section 1692a(6)(F)(ii) extended only to original lenders, it would be superfluous. The exception must therefore apply to entities besides the original lender that play a significant role in the transaction from its origination.

Telecredit argues that its authorization of Holmes' check is the type of participation in the original transaction that qualifies it as an "originator." I disagree. By its authorization, Telecredit merely supplied certain information to its subscriber that aided Union Park Pontiac in its decision to accept Holmes' check. Telecredit had no direct interaction with the consumer Holmes. It did not limit or define the terms of the transaction. It did not investigate Holmes' assets or his ability to cover the amount of the check. It merely stated that it had no record of prior dishonored checks written by Holmes and that it would purchase the check from Union Park Pontiac if it was dishonored by Holmes' bank. Although this information facilitated the transaction between Holmes and Union Park Pontiac, Telecredit did not participate in the exchange. Telecredit therefore did not originate the debt.

---

4. Telecredit argues that, like creditors, it is "restrained by the desire to protect [consumer] good will when collecting past due accounts ... [, is likely to have] future contact with the consumer and ... [is] concerned with the consumer's good opinion of [it]." S.Rep. No. 95–382, 95th Cong., 1st Sess., *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1696. This is simply not the case. Telecredit's "customers" are the businesses which subscribe to its services. Except for its collection activities, it has no direct dealings with ultimate consumers, and its business does not depend upon their good will.

Finally, Telecredit argues that the exception for "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... (iii) concerns a debt which was not in default at the time it was obtained by such person....," 15 U.S.C.A. § 1692a(6)(F), applies. However, Telecredit acquired no ownership interest in the check prior to the time it was returned unpaid by the bank. Although Telecredit had an obligation to purchase the check if it was dishonored, that obligation was triggered only when the check was returned unpaid and not before. Had Holmes' bank honored the check—in other words, had there never been a default—Telecredit would never have acquired any legal interest in the check whatsoever. The debt was thus in default at the time it was obtained by Telecredit.

In summary, I find that the activities of defendant Telecredit fit the general definition of "debt collector," 15 U.S.C.A. § 1692a, for purposes of the FDCPA. None of the statutory exceptions, *Id.* §§ 1692a(6)(A)–(F), are applicable in this case. Therefore, defendant's motion for summary judgment will be denied. An order will issue in conformity with this opinion.