**Gary BALLARD and Nancy Ballard, Plaintiffs,**

v.

**EQUIFAX CHECK SERVICES, INC., Defendant.**

**No. CIV. S–96–1532 FCD GGH.**

United States District Court, E.D. California.

Oct. 27, 1998.

Paul Arons, Law Office of Paul Arons, Redding, CA, O. Randolph Bragg, Law Office of O. Randolph Bragg, Chicago, IL, for Plaintiffs.

David L. Hartsell, Kilpatrick Stockton LLP, Atlanta, GA, Audrey A. Millemann, Weintraub, Genshlea & Sproul, Law Corporation, Sacramento, CA, for Defendant.

## MEMORANDUM AND ORDER

DAMRELL, District Judge.

Plaintiffs Gary and Nancy Ballard bring this action against defendant Equifax Check Services, Inc. ("ECS") for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and the California Unfair Business Practices Act ("CUBPA"), Cal. Bus. & Prof.Code §§ 17200 *et seq.* This action was initially brought as a class-action, and plaintiffs initially moved this court for partial summary judgment on a class-wide basis as to liability, restitution, declaratory and injunctive relief. Fed. R.Civ.P. 56. However, after this motion was filed, on September 9, 1997, the court denied plaintiffs' motion for class certification. At the May 14, 1998 hearing on plaintiffs' motion for summary judgment, plaintiffs' counsel conceded that the denial of class certification mooted the motion as to the issues of injunctive relief and restitution. Thus, only plaintiffs' requests for declaratory relief and a finding of liability are currently before the court.[1]

---

1. Because plaintiffs raised certain issues for the first time in their reply brief, the court permitted both parties to file additional briefing. The court has considered those briefs and disposes of plaintiffs' motion herein.

2. The agreement, attached as Exhibit 4 to the Declaration of Paul Arons, is dated July 1, 1996, over one month *after* Gary Ballard wrote the check in question. At oral argument, the court requested a copy of the Agreement in effect on May 13, 1996. The parties failed to comply with the court's request. The court, therefore, relies on the undisputed facts for the terms of the Agreement.

## BACKGROUND

Defendant ECS is in the check authorization and warranty business. ECS contracts with retail merchants who accept checks from their customers. When a customer presents a check to the merchant, the merchant contacts ECS for authorization. ECS consults its computer files to see if it has any pertinent information on the check writer and advises the merchant to either accept or decline the check. Subscribing merchants pay ECS either a fixed fee or a percentage of each check for which authorization is requested. ECS agrees to purchase for full value, up to a certain dollar amount, any dishonored checks it authorizes.

Once ECS purchases a check, the first step it takes is to redeposit the check. A "redeposit advisement notice" is automatically generated and mailed as soon as the check is entered into ECS' system as a paid warranty claim. Assuming the check clears on redeposit, ECS sends a series of additional letters, spaced approximately two or three weeks apart, demanding a $20.00 service charge. The service charge represents the costs and expenses incurred by ECS in seeking to obtain payment of the dishonored check. Undisputed Fact No. 9.

Sometime prior to May 13, 1996, ECS and Reebok Factory Direct ("Reebok") entered into an agreement similar to that described above ("Agreement").[2] On May 13, 1996, plaintiff Gary Ballard wrote a check in the amount of $26.93 to the Reebok store in Tracy, California to purchase shirts for himself.[3] ECS authorized the check, but it

---

3. ECS contends that plaintiffs failed to establish Gary Ballard wrote the check to purchase shirts for himself, and thus, failed to establish the check was written as part of a consumer transaction, a necessary element of a claim under the FDCPA. *See* 15 U.S.C. § 1692a(5). It is undisputed that the purchase was made at a retail outlet, and that Gary Ballard testified that he wrote the check to purchase shirts for himself. ECS has produced no evidence to the contrary. Accordingly, ECS has failed to raise a genuine issue of material fact as to whether the purchase was a commercial transaction for purposes of the FDCPA. *See Newman v. Checkrite California, Inc.*, 912 F.Supp. 1354, 1364 n. 7 (E.D.Cal.1995) ("collection of dishonored checks written to retailers falls within purview of FDCPA").

bounced. Reebok submitted a warranty claim to ECS on or about June 10, 1996, and pursuant to the Agreement, ECS purchased the check. On or about June 10, 1996, ECS sent Gary Ballard a "Redeposit Advisement Notice," advising him that his check had been redeposited and demanding a $20.00 service charge. The check cleared the bank on redeposit.

Beginning on July 1, 1996, ECS sent Gary Ballard a total of five demands for payment of a $20.00 service charge in connection with the check. Three of the letters advised Gary Ballard that the service charge was authorized under California law.

While each of the written demands was addressed to Gary Ballard, plaintiff Nancy Ballard contends that on or about July 22, 1996, she called ECS to inquire about the service charge. According to her, an ECS representative told her that a $20.00 service charge was owed and that *she* needed to send this amount to ECS. ECS has no record of this conversation, but contends that to the extent it did occur, it denies any demand was made on Nancy Ballard personally, but rather only as the personal representative of her husband Gary Ballard. Neither Gary or Nancy Ballard ever paid the $20.00 service charge.

Plaintiffs seek partial summary judgment as to ECS' liability for demanding a $20.00 service charge and representing such a charge was authorized under California law in violation of the FDCPA and CUBPA. Plaintiffs also seek partial summary judgment as to their declaratory relief claim for the same alleged actions.

### STANDARD

Summary judgment is appropriate if the record, read in the light most favorable to the non-moving party, demonstrates no genuine issue of material fact. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those necessary to the proof or defense of a claim, and are deter-

mined by reference to the substantive law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Rule 56 specifically provides that summary judgment may be rendered on the issue of liability alone, Fed.R.Civ.P. 56(c), as well as on a claim for declaratory relief, Fed. R.Civ.P. 56(a).[4]

### ANALYSIS

#### 1.  *Liability Under The FDCPA*

Plaintiffs argue that ECS is liable for attempting to collect an unauthorized and unlawful $20.00 service charge and for misrepresenting the nature, amount and legal status of the debt owed, in violation of the FDCPA. 15 U.S.C. §§ 1692f & 1692e.

#### A.  "Debt Collector"

The FDCPA imposes civil liability only on "debt collectors." 15 U.S.C. § 1692k. The FDCPA, defines a "debt collector" as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . .

15 U.S.C. § 1692a(6).

■ ECS argues that it is not a "debt collector" under the FDCPA because: (1) its principal business is the authorizing and warranting of checks (not debt collection); and (2) it regularly collects or attempts to collect debts owed to it (not another). These arguments were expressly rejected in *Holmes v. Telecredit Service Corp.,* 736 F.Supp. 1289, 1291–94 (D.Del.1990). The court finds the reasoning in *Holmes* persuasive. The defendant in *Holmes,* Telecredit, was a check authorization company which also entered into agreements with merchants to purchase the dishonored checks it authorized. As here, check purchasing was part and parcel of Telecredit's agreement with the merchant. There, the court held that the FDCPA is not limited to entities whose sole or principal

---

4.  Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and

other legal relations of any interested party seeking such declaration, whether or not future relief is or could be sought."

purpose is debt collection. *Id.* at 1291. Because ECS collects debts in the regular course of its business, it was intended to be covered by the FDCPA. *Id.; see also Fox v. Citicorp Credit Serv., Inc.,* 15 F.3d 1507, 1512 (9th Cir.1994) (holding that an attorney is covered by the FDCPA if he or she "regularly collects or attempts to collect, directly or indirectly, debts owed or due ... another."). Likewise, the fact that ECS does not begin collection efforts until after it has purchased the dishonored checks does not mean it is not collecting or attempting to collect debts owed or due another. *See Holmes,* 736 F.Supp. at 1292–93. ECS is a third party collecting a debt originally owed to another. *See id.* at 1293. Although ECS "may facilitate the transactions of its subscribers, it is not in the business of extending credit." *See id.* "It cannot escape the spirit of the FDCPA merely by the technicality of purchasing the debt upon default so that title technically rests in itself." *See id.* Accordingly, the court finds that ECS is a "debt collector" within the meaning of the FDCPA.

■ ECS' contention that a dishonored check is not a debt under the FDCPA is equally unavailing. A dishonored check is a debt within the meaning of the FDCPA. *Charles v. Lundgren & Assocs.,* 119 F.3d 739, 742 (9th Cir.1997) (citing *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.,* 111 F.3d 1322 (7th Cir.1997)).[5]

## B. Liability Under § 1692f

The FDCPA prohibits:

The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) *unless such amount is expressly authorized by the agreement creating the debt or permitted by law.*

15 U.S.C. § 1292f(1) (emphasis added).

### (1) Expressly Authorized By The Agreement Creating The Debt

■ A fundamental requirement in the formation of a contract is mutual assent, i.e.

a meeting of the minds. *See* Cal. Civ.Code §§ 1550 & 1565. ECS does not seriously contend that there was an agreement between ECS and Gary Ballard. However, ECS contends generally that "an agreement between the merchant and the consumer to pay the service charge can arise in a number of ways—the posting of a notice, ... [an] oral notice from the person accepting the check, prior dealings between the parties, or prior instances where the check writer bounced a check and was asked to pay a service charge." ECS, however, failed to produce evidence that any of the above actually occurred in this case. ECS' sole evidence is its agreement with Reebok requiring Reebok to "display Equifax-supplied service-charge notices at the point-of-sale at each of its Locations ... so that they are clearly visible to all Checkwriters." ECS does not actually allege that such a sign was in fact posted, or that Gary Ballard read the sign before making his purchase. Absent such factual allegations or argument, there can be no finding of mutual assent between Gary Ballard and ECS.

### (2) Permitted By Law

■ In the absence of such an express agreement, whether charges are permissible within the meaning of the FDCPA turns on California law. *See Newman v. Checkrite California, Inc.,* 912 F.Supp. 1354, 1367 (E.D.Cal.1995) (citing *West v. Costen,* 558 F.Supp. 564, 582 (W.D.Va.1983)); *see also Ditty v. CheckRite Ltd., Inc.,* 973 F.Supp. 1320, 1328 (D.Utah 1997); *Patzka v. Viterbo College,* 917 F.Supp. 654, 659 (W.D.Wis.1996). Pursuant to the FDCPA, ECS must "identify some state statute which 'permits,' i.e. authorizes or allows, in however general a fashion, the fees or charges in question." *Newman,* 912 F.Supp. at 1368.[6]

■ ECS contends the charges were authorized as "incidental damages" under Cali-

---

5. Moreover, the "Redeposit Advisement Notice" and all subsequent demands mailed to Gary Ballard stated that, "[t]he purpose of this letter is to collect a *debt.*" (Emphasis added.)

6. Beginning January 1, 1997, service charges of $25.00 to $35.00 for dishonored checks were expressly permitted by statute. Cal. Civ.Code § 1719(a)(1). The amendment is inapplicable

fornia Commercial Code sections 2709 and 2710.[7] Sections 2709 and 2710 are contained in Division 2 of the California Commercial Code which governs "SALES," and Chapter 7 which governs "REMEDIES." As set forth below, the imposition of a service charge in a case such as this is not governed by Division 2, but by Division 3, of the California Commercial Code.

By its own terms, Division 2 applies to transactions in *goods* and therefor is inapplicable to these facts. Cal. Comm.Code § 2102. Section 2709 ("Action for Price") provides that when the buyer fails to pay the price as it becomes due, "the seller may recover, together with any incidental damages under the next section, the price...." The next section, Section 2710 ("Seller's Incidental Damages"), provides:

> Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyers' breach, in connection with return or resale of the goods or otherwise resulting from the breach.

ECS contends that as the holder of the check, it stands in the seller, Reebok's, shoes. ECS contends that, under section 2707, "it is a person in the position of a seller." Section 2707 provides:

> A person in the position of a seller includes as against the principal an agent who has paid or become responsible for the price of *goods* on behalf of his principal or anyone who otherwise holds a security or other right in *goods* similar to that of a seller.

[Such a person] "may as provided in this division ... recover incidental damages." Cal. Comm.Code § 2707 (emphasis added). As plaintiffs correctly point out, section 2707 applies to someone who has acquired an interest in the *goods*. ECS has no such interest. Accordingly, ECS' service charge was not permitted under sections 2707, 2709 or 2710.[8]

■ This case involves the rights of a holder of a dishonored check, and thus, is governed by Division 3 governing "COMMERCIAL PAPER," and more specifically Chapter 3, "ENFORCEMENT OF INSTRUMENTS." *See, e.g., Cohen v. Disner*, 36 Cal.App.4th 855, 857, 859, 42 Cal.Rptr.2d 782 (1995); *see also* Ahart, *California Practice Guide: Enforcing Judgments & Debts*, 3:240.8 (The Rutter Group 1997).

■ When a check is dishonored, the seller may sue on *either* the dishonored check or the contract of sale if the obligee has possession of the instrument. Cal. Comm.Code § 3310(b)(3). Section 3310(b)(3) provides in pertinent part:

> [I]f the check ... is dishonored and the obligee of the obligation for which the instrument was taken is the person entitled to enforce the instrument, the obligee may enforce either the instrument or the obligation.

ECS was not the "obligee of the obligation for which the check was taken," Cal. Comm. Code § 3310(b)(3), it was the holder. *See* Cal. Com.Code § 1201(5), (20). Where a seller sells a check to a holder, the only right that remains is the right to enforce the instrument (not the obligation). Cal. Comm. Code § 3310, Official Comment 3.[9] Thus,

---

here because Gary Ballard's check was written in 1996.

**7.** Unless otherwise noted, citations in this subsection are to the California Commercial Code.

**8.** The court is not persuaded that damages "resulting from the breach" include costs incurred in collecting the underlying debt. The court is unaware of any case, nor has one been cited to the court, applying § 2710 to a situation such as this, or holding generally that such a service charge is recoverable as an incidental damage. Thus, even if the court were persuaded that Division 2 applied and ECS stood in the shoes of the

seller Reebok, which the court is not, it does not follow that ECS would be entitled to such costs.

**9.** Comment 3 provides in pertinent part:

> If the check or note is dishonored, the seller may sue on either the dishonored instrument or the contract of sale if the seller has possession of the instrument and is the person entitled to enforce it. If the right to enforce the instrument is held by somebody other than the seller, the seller can't enforce the right to payment of the price under the sales contract because that right is represented by the instrument which is enforceable by somebody else. Thus, if the seller sold the note or the check to

ECS was limited to enforcing the instrument, and thus, its recovery was limited to the face value of the check. When the check cleared on redeposit, ECS received the only remedy is was entitled to, the amount of the check. Under applicable California law, it did not have a right to continue to demand a $20.00 service charge.[10] Thus, ECS has failed to meets its burden of identifying "some state statute which permits . . . the fees or charges in question."

### C. Liability Under § 1692e

In addition to the above, the FDCPA also prohibits:

> The false representation of . . . the character, amount, or legal status of any debt, [and][t]he use of any false representation or deceptive means to collect or attempt to collect any debt.

15 U.S.C. § 1692e(2)(A) & (10).

■ On July 1, 1996, ECS sent Gary Ballard a letter demanding payment of a $20.00 service charge "allowed us by California state law." On July 15 and August 5, 1996, ECS wrote to Gary Ballard again demanding payment of a $20.00 service charge "entitled to holders of dishonored checks in the state of California." As indicated above, such charges were not authorized under California law, and thus, ECS' representations in this regard falsely represented the character and legal status of the debt and were therefore deceptive.

### 2. *Liability Under The CUBPA*

■ The CUBPA, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, prohibits unfair competition. Section 17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice." "Unlawful practices" are any practices forbidden by

law. *Saunders v. Superior Court*, 27 Cal. App.4th 832, 838–39, 33 Cal.Rptr.2d 438 (1994). Because ECS' imposition of a service charge and representations concerning the same constitute violations of the FDCPA, ECS' actions also violated the CUBPA.[11]

### 3. *Nancy Ballard*

■ Nancy Ballard contends that ECS also demanded that she pay the $20.00 service charge in violation of the FDCPA and CUBPA. ECS denies any demand was made on Nancy Ballard personally. The court finds that triable issues of material fact exist as to plaintiff Nancy Ballard's claims.

### CONCLUSION

1. Plaintiffs' motion for summary judgment as to claims asserted by plaintiff Nancy Ballard is DENIED.

2. Plaintiffs' motion for summary judgment as to the request for declaratory relief is GRANTED as to plaintiff Gary Ballard. The court declares that (1) the $20.00 service charge demanded by ECS from Gary Ballard was neither expressly authorized by the agreement creating the debt or permitted by law in violation of 15 U.S.C. § 1692f(1); (2) ECS' representation that the $20.00 service charge was authorized under California law falsely represented the character and legal status of the debt and was deceptive in violation of 1692e(2)(A),(10); and (3) the aforementioned violations constitute "unfair competition" in violation of Cal. Bus. & Prof. Code § 17200.

3. Plaintiffs' motion for summary judgment as to a finding of liability is GRANTED as to plaintiff Gary Ballard. The court finds ECS liable to Gary Ballard under the 15 U.S.C. §§ 1692f(1) and 1692e(2)(A),(10) and

a holder and has not reacquired it after dishonor, the only right that survives is the right to enforce the instrument.

10. Even if ECS had the right to elect to enforce either the obligation or the instrument, it elected to enforce the instrument when it redeposited the check, and it was paid in full. Once the check was paid, the payment of the underlying debt became absolute and related back to the date of the delivery of the check to Reebok. *See Long v. Cuttle Constr. Co.*, 60 Cal.App.4th 834, 837, 70

Cal.Rptr.2d 698 (1998) (citing *Navrides v. Zurich Ins. Co.*, 5 Cal.3d 698, 706, 97 Cal.Rptr. 309, 488 P.2d 637 (1971)).

11. Private litigants, however, have no independent cause of action for damages under the CUBPA. *MAI Systems Corp. v. UIPS*, 856 F.Supp. 538, 541 (N.D.Cal.1994) (citing *Industrial Indemnity Co. v. Superior Court*, 209 Cal.App.3d 1093, 257 Cal.Rptr. 655 (1989)). Their remedies are limited to restitution and injunctive relief. *Id.*

Cal. Bus. & Prof.Code § 17200 for demanding a $20.00 service charge from him and representing to him that such a service charge was authorized under California law.

4. Plaintiffs' motion for summary judgment as to the claims for injunctive relief and restitution is moot.

5. A status conference is set for September 18, 1998.

IT IS SO ORDERED.